IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| **IBAN TREVINO,** §<br>   *Plaintiff*, §<br>§<br>vs. §<br>§<br>**TRANSPORTADORA EGOBA** §<br>**SA DE CV AND SERGIO** §<br>**ALFREDO LEDESMA GALVEZ,** §<br>   *Defendants*. § | **CIVIL ACTION NO. 5:22-cv-00092** |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff, IBAN TREVINO, complaining of TRANSPORTADORA EGOBA SA DE CV and SERGIO ALFREDO LEDESMA GALVEZ, Defendants, and for cause of action shows unto the Court the following:

### I. PARTIES

1. Plaintiff, IBAN TREVINO, is an individual citizen of the State of Texas.

2. Defendant, TRANSPORTADORA EGOBA SA DE CV, is a Mexican company doing business in the State of Texas and licensed by the United States Department of Transportation, Federal Motor Carrier Safety Administration ("FMCSA") to operate as a motor carrier in the United States. It may be served with process by serving its registered agent for service in the United States, Pedro Alegria, 511 Boise Way, Laredo, Texas 78041.

3. Defendant, SERGIO ALFREDO LEDESMA GALVEZ, is a Mexican citizen who at all times material hereto was operating a motor vehicle in Texas, who at all times material hereto was operating a commercial motor vehicle on public roadway in Texas.

Plaintiff's Original Complaint - Page 1

Accordingly, he may be served with process by serving: J. Bruce Bugg, Jr., Chairman, Texas Transportation Commission, 125 E. 11th Street, Austin, Texas 78701-2483.

4. Upon request and payment of $25, together with two (2) copies of the citation and Complaint, the Chairman of the Texas Transportation Commission shall forward same to: SERGIO ALFREDO LEDESMA GALVEZ, 8919 Calle Canales, Colonia La Sandia, Nuevo Laredo, Tamaulipas, Mexico 88295.

## II. JURISDICTION AND VENUE

5. This Court has diversity jurisdiction because the matter in controversy exceeds $75,000.00 and the case is between citizens of different states. 28 U.S.C. § 1332.

6. Venue is proper in the Southern District of Texas, Laredo Division, because a substantial part of the events and omissions giving rise to the claim occurred in Laredo, Webb County, Texas. *See* 28 U.S.C. § 1391(b)(2).

## III. FACTS

7. Defendant TRANSPORTADORA EGOBA SA DE CV ("TRANSPORTADORA EGOBA") is a motor carrier licensed by the FMCSA.

8. In exchange for authority to operate 80,000-pound commercial motor vehicles on public roadways in the United States, TRANSPORTADORA EGOBA certified in writing and under oath to the FMCSA, that:

    A. it had in place a system for ensuring the overall compliance with the Federal Motor Carrier Safety Regulations ("FMCSR");

    B. it had a place a driver safety training/orientation program;

    C. it had in a system for overseeing driver qualification requirements;

    D. it had in place policies and procedures consistent with FMCSA regulations governing

        driving and operational safety of motor vehicles, including drivers' hours-of-service and vehicle inspection, repair, and maintenance; and

    E.    it had in place a system for complying with the FMCSR governing alcohol and controlled substances testing requirements.

9. In exchange for authority to operate 80,000-pound commercial motor vehicles on public roadways in the United States, TRANSPORTADORA EGOBA also warranted to the FMCSA, that its drivers had knowledge of the FMCSR and of the traffic laws of the State of Texas.

10. TRANSPORTADORA EGOBA knew that if it broke these promises it made to the FMCSA and if it failed to implement the safety management systems necessary to ensure compliance with the FMCSR(including the qualification of drivers) there would naturally and probably be preventable crahes resulting in injury and damage.

11. Despite this knowledge, TRANSPORTADORA EGOBA repeatedly broke its promises to the FMCSA and violated the FMCSR.

12. TRANSPORTADORA EGOBA failed to ensure that its drivers had knowledge of the FMCSR and of the traffic laws of the State of Texas.

13. The FMCSA conducted multiple audits and inspections of TRANSPORTADORA EGOBA that reveal numerous violations of the FMCSR by TRANSPORTADORA EGOBA.

14. In the *last two years alone*, roadside inspections of TRANSPORTADORA EGOBA's commercial motor vehicles recorded by the FMCSA have revealed that TRANSPORTADORA EGOBA's drivers have been cited hundreds of times for violating the FMCSR.

15. According to the FMCSA, in the *two years* before TRANSPORTADORA EGOBA caused the crash that injured Plaintiff, its drivers had been involved in at least two other crahes in

Plaintiff's Original Complaint - Page 3

Texas.

16. According to the FMCSA, in the *two years* before TRANSPORTADORA EGOBA caused the crash that injured Plaintiff, at least one of its drivers was cited for operating a tractor trailer in Texas without a Commercial Drivers License.

17. At all times relevant to this lawsuit, SERGIO ALFREDO LEDESMA GALVEZ ("LEDESMA GALVEZ") was acting within the course and scope of employment for TRANSPORTADORA EGOBA.

18. Upon information and belief, TRANSPORTADORA EGOBA violated the certified promises it made to the FMCSA in its application to operate commercial motor vehicles in the United States by failing to properly qualify LEDESMA GALVEZ to drive and to train its driver, LEDESMA GALVEZ.

19. Had TRANSPORTADORA EGOBA properly qualified LEDESMA GALVEZ, the crash would not have occurred. That is, had TRANSPORTADORA EGOBA not qualified LEDESMA GALVEZ to drive its tractor trailer, this crash would not have occurred.

20. Upon information and belief, TRANSPORTADORA EGOBA violated the certified promises it made to the FMCSA in its application to operate commercial motor vehicles in the United States by not adopting and enforcing policies and procedures to ensure that its drivers operated tractor trailers in a safe manner.

21. TRANSPORTADORA EGOBA's vice-principals had actual, subjective awareness that the company's driver safety training program was inadequate, creating an extreme degree of risk, considering the probability and magnitude of the potential harm to the motoring public.

22. Despite TRANSPORTADORA EGOBA's vice-principals' actual, subjective knowledge of the extreme degree of risk created by its inadequate driver safety training and qualification

programs, TRANSPORTADORA EGOBA proceeded with conscious indifference to the rights, safety, and welfare of the motoring public by continuing to put unqualified, inadequately trained drivers behind the wheel.

23. TRANSPORTADORA EGOBA hired LEDESMA GALVEZ, who was an unfit, unsafe, and untrained driver.

24. TRANSPORTADORA EGOBA did not adequately train and qualify LEDESMA GALVEZ before putting him behind the wheel of a tractor-trailer.

25. The industry standard for motor carriers is to discourage tractor-trailer drivers from making unprotected left turns.

26. The industry standard for motor carriers is to ensure, through training and monitoring, that their drivers know that unprotected left turns are dangerous and should be avoided.

27. TRANSPORTADORA EGOBA's vice-principals had actual, subjective awareness that a driver making an unprotected left turn on a public roadway creates an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

28. TRANSPORTADORA EGOBA's actual, subjective knowledge of the extreme degree of risk involved with unprotected left turns came, in part, from crahes that TRANSPORTADORA EGOBA drivers have had in the past when attempting unprotected left turns.

29. TRANSPORTADORA EGOBA's actual, subjective knowledge of the extreme degree of risk involved in unprotected left turns came, in part, from its knowledge of other motor carriers' drivers causing crahes when making unprotected left turns.

30. Despite TRANSPORTADORA EGOBA's actual, subjective knowledge of the extreme degree of risk associated with unprotected left turns, TRANSPORTADORA EGOBA acted with conscious indifference to the rights, safety, and welfare of others by putting drivers (including LEDESMA GALVEZ) behind the wheel without ensuring that the drivers understood why unprotected left turns were dangerous and understood that unprotected left turns should be avoided.

31. The industry standard for motor carriers is to ensure that their drivers know never to turn left in front of oncoming traffic if doing so will require oncoming vehicles to stop or swerve to avoid a collision. This industry standard is set out in the model Commercial Driver License Manual, each state's commercial driver license manual, the United States Department of Transportation's Preventable Accident Manual, and numerous other publications.

32. Because of their length, tractor-trailers take more time than passenger vehicles to clear an intersection in a turn.

33. It is well known in the trucking industry that making a left turn when there is an oncoming vehicle that would have to stop or swerve to avoid a collision creates an extreme degree of risk to the rights, safety, and welfare of the occupants of the oncoming vehicle.

34. TRANSPORTADORA EGOBA's vice-principals had actual, subjective knowledge of the extreme degree of risk associated with making a left turn when there is an oncoming vehicle that would have to stop or swerve to avoid a collision.

35. Despite TRANSPORTADORA EGOBA's actual, subjective knowledge of the extreme degree of risk associated with unprotected left turns, TRANSPORTADORA EGOBA acted with conscious indifference to the rights, safety, and welfare of others by putting drivers (including LEDESMA GALVEZ) behind the wheel without ensuring that the drivers

understood the dangers or making a left turn when there is an oncoming vehicle that would have to stop or swerve to avoid a collision.

36. Despite TRANSPORTADORA EGOBA's actual, subjective knowledge of the extreme degree of risk associated with unprotected left turns, TRANSPORTADORA EGOBA acted with conscious indifference to the rights, safety, and welfare of others by failing to ensure that TRANSPORTADORA EGOBA's drivers (including LEDESMA GALVEZ) knew to never make a left turn when there is an oncoming vehicle that would have to stop or swerve to avoid a collision.

37. The industry standard for motor carriers is to ensure that drivers have the knowledge and skills needed to scan the road ahead, see oncoming vehicles and other potential hazards, and to avoid turning in front of oncoming vehicles if doing so will require the other vehicle to swerve or brake to avoid a collision.

38. TRANSPORTADORA EGOBA's vice-principals had actual, subjective knowledge of the extreme degree of risk associated with a driver who lacks the knowledge and skills needed to scan the road ahead, see oncoming vehicles and other potential hazards, and to avoid turning in front of oncoming vehicles if doing so will require the other vehicle to swerve or brake to avoid a collision.

39. Despite TRANSPORTADORA EGOBA's actual, subjective knowledge of the extreme degree of risk associated with drivers who lack the required knowledge and skills, TRANSPORTADORA EGOBA acted with conscious indifference to the rights, safety, and welfare of others by failing to ensure that TRANSPORTADORA EGOBA's drivers (including LEDESMA GALVEZ) had the knowledge and skills needed to scan the road ahead, see oncoming vehicles and other potential hazards, and to avoid turning in front of

oncoming vehicles if doing so will require the other vehicle to swerve or brake to avoid a collision.

40. The industry standard for motor carriers for dispatchers to assist drivers with route planning so that drivers know where they need to turn and can do so without making unsafe left turns.

41. The industry standard for motor carriers is to ensure that drivers have skills in route planning, and that drivers work with their dispatchers to plan routes and know where they need to turn.

42. TRANSPORTADORA EGOBA violated industry standards and was negligent in failing to ensure that drivers (including LEDESMA GALVEZ) had the necessary route planning skills.

43. TRANSPORTADORA EGOBA violated industry standards and was negligent in failing to ensure that its dispatchers went over the route plan with its drivers, including LEDESMA GALVEZ.

44. As a result of TRANSPORTADORA EGOBA's failure to train its drivers and implement adequate policies and procedures, TRANSPORTADORA EGOBA and its drivers were convicted of numerous violations of the FMCSR.

45. On or about July 8, 2022, LEDESMA GALVEZ was operating a tractor trailer for TRANSPORTADORA EGOBA in Laredo, Webb County, Texas.

46. Due to TRANSPORTADORA EGOBA's inadequate training and qualification of LEDESMA GALVEZ, combined with TRANSPORTADORA EGOBA's dispatcher's failure to plan the route, LEDESMA GALVEZ chose to make an unprotected left turn in front of oncoming traffic.

47. LEDESMA GALVEZ chose to make an unprotected left turn.

48. Due to TRANSPORTADORA EGOBA's inadequate training and qualification, LEDESMA GALVEZ did not know that it was dangerous to make an unprotected left turn in a tractor-

trailer.

49. Due to TRANSPORTADORA EGOBA's inadequate training and qualification, LEDESMA GALVEZ did not fully appreciate the danger of making a left turn when there is an oncoming vehicle that would have to stop or swerve to avoid a collision.

50. Due to TRANSPORTADORA EGOBA's inadequate training and qualification, LEDESMA GALVEZ did not know that he should never make a left turn when there is an oncoming vehicle that would have to stop or swerve to avoid a collision.

51. Due to TRANSPORTADORA EGOBA's inadequate training and qualification, LEDESMA GALVEZ failed to scan the road ahead, see oncoming vehicles and other potential hazards, and to avoid turning in front of oncoming vehicles if doing so will require the other vehicle to swerve or brake to avoid a collision

52. Plaintiff, IBAN TREVINO, was approaching from the opposite direction on the roadway.

53. IBAN TREVINO was visible to LEDESMA GALVEZ, yet LEDESMA GALVEZ turned in front of IBAN TREVINO.

54. IBAN TREVINO had the right of way.

55. LEDESMA GALVEZ failed to yield the right of way to oncoming traffic.

56. The tractor trailer that LEDESMA GALVEZ was operating for TRANSPORTADORA EGOBA collided with Plaintiff, IBAN TREVINO.

57. IBAN TREVINO did not have sufficient time to perceive the tractor-trailer turning in front of him, react to LEDESMA GALVEZ's action, and avoid the crash.

58. Pleading in the alternative, if LEDESMA GALVEZ did know that it was dangerous to make a left turn when there is an oncoming vehicle that would have to stop or swerve to avoid a collision, then he acted with conscious indifference to the rights, safety, and welfare of IBAN

TREVINO when he made the unprotected left turn on July 8, 2022.

59. Pleading in the alternative, if LEDESMA GALVEZ knew dangerous to make an unprotected left turn on a public roadway, then he acted with conscious indifference to the rights, safety, and welfare of IBAN TREVINO when he made the unprotected left turn on July 8, 2022.

60. The crash caused Plaintiff severe and permanent bodily injuries. These injuries resulted in the amputation of one leg, multiple broken bones and permanent bodily injuries.

61. The manner in which the collision occurred (an unsafe left turn that failed to yield right-of- way) is consistent with fatigue, violations of the hours-of-service regulations, and distracted driving.

62. Upon information and belief, LEDESMA GALVEZ was distracted by an electronic device, fatigued, and/or operating the vehicle in violation of the hours-of-service regulations set out in Part 395 of the FMCSR.

63. Had TRANSPORTADORA EGOBA trained LEDESMA GALVEZ on the dangers of driving while fatigued, the hours-of- service rules, and the hazards of distracted driving, the crash would not have occurred.

64. Had TRANSPORTADORA EGOBA implemented policies and procedures to monitor and audit drivers' hours-of- service, it would have caught LEDESMA GALVEZ's unsafe driving practices. TRANSPORTADORA EGOBA then could have taken remedial action that would have prevented this crash.

65. Defendants are jointly responsible for the safe operation of the tractor-trailer at issue.

## IV. CAUSES OF ACTION

### NEGLIGENCE OF DEFENDANT LEDESMA GALVEZ

66. Plaintiff hereby incorporates paragraphs 7 - 65 as if fully set forth herein.

67. LEDESMA GALVEZ had a duty to exercise the degree of care that a reasonably careful

person would use to avoid harm to others under circumstances like those described herein.

68. Plaintiff's damages were proximately caused by LEDESMA GALVEZ's breach and negligent disregard of said duty. The breach and negligent disregard of the duty consisted of, but is not limited to, the following acts and omissions:

   A. Operating a vehicle in careless manner and/or in violation of the Texas Transportation Code;

   B. Failing to yield the right of way to on-coming traffic;

   C. Failing to keep a proper lookout for Plaintiffs' safety that would have been maintained by a person of ordinary prudence under the same or similar circumstances;

   D. Failing to maintain a clear and reasonable distance between TRANSPORTADORA EGOBA's tractor trailer and other traffic on the roadway, including Plaintiffs' motor vehicle;

   E. Making an improper and unsafe left turn;

   F. Failing to control the operation of his vehicle;

   G. Failing to avoid the crash in question;

   H. Failing to operate his vehicle in a safe and prudent manner;

   I. Failing to keep a proper lookout for other vehicles using the roadway;

   J. Driver inattention;

   K. Violating the terms and provisions of Texas Transportation Code, the Texas Driver's Handbook, and the Texas Commercial Motor Vehicle Drivers' Handbook;

   L. Driving while fatigued in violation of FMCSR 392.3;

   M. Driving in violation of the hours-of-service regulations set out in part 395 of the FMCSR;

   N. Driving while distracted;

   O. Failing to properly plan his route;

    P.    Failing to pay proper attention and missing his turn;

    Q.    Other acts of negligence and/or negligence *per se*; and

    R.    Any other acts of negligence discovered and to be shown at the time of trial.

69. Each of the foregoing acts and omissions, whether taken singularly or in combination, constituted a breach of LEDESMA GALVEZ's duty and was a proximate cause of the collision made the basis of this cause of action and the injuries and damages suffered by Plaintiff.

70. The damages that Plaintiff was caused are the types of harm that the above statutes are intended to prevent. Plaintiff is a member of the class of people these statutes were enacted to protect. Such violations of statutes, as identified herein amount to negligence *per se* and are a proximate cause of the occurrence in question.

71. Defendant LEDESMA GALVEZ knew that his conduct (including driving while fatigued, violating the hours-of-service regulations, and/or distracted driving) would naturally and probably result in injury or damage. Nevertheless, LEDESMA GALVEZ continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred. Thus, LEDESMA GALVEZ is liable for punitive damages.

## NEGLIGENCE OF DEFENDANT TRANSPORTADORA EGOBA
### (Vicarious Liability)

72. Plaintiff hereby incorporates paragraphs 7 - 65 as if fully set forth herein.

73. At all times material hereto, LEDESMA GALVEZ was in the course and scope of his employment for TRANSPORTADORA EGOBA.

74. Because LEDESMA GALVEZ was acting in the course and scope of employment with

TRANSPORTADORA EGOBA when the crash occurred, TRANSPORTADORA EGOBA is vicariously liable to Plaintiff under the doctrine of *respondeat superior* and/or the statutory employment doctrine.

### (Direct Liability)

75. Plaintiff hereby incorporates paragraphs 7- 65 as if fully set forth herein.

76. TRANSPORTADORA EGOBA was negligent in hiring and/or qualifying LEDESMA GALVEZ to operate its tractor trailer. This negligence was a proximate cause of the crash and Plaintiff's damages.

77. TRANSPORTADORA EGOBA was negligent in failing to monitor, train, educate, direct, set policy, or give guidance to its drivers, including LEDESMA GALVEZ, regarding:

    A. The safe operation of commercial motor vehicles;

    B. Distracted driving;

    C. Fatigue (including the dangers of fatigue, recognizing fatigue, and avoiding fatigue);

    D. The hours-of-service rules set out in Part 395 of the FMCSR;

    E. The dangers of unprotected left turns;

    F. That tractor-trailer drivers should avoid unprotected left turns;

    G. Seeing and hazard perception;

    H. Never turning in front of an oncoming vehicle if the oncoming vehicle would have to brake or swerve to avoid a collision;

    I. Route planning; and

    J. The necessity of going over the route plan with the dispatcher.

78. TRANSPORTADORA EGOBA undertook to provide training to its drivers about the FMCSR and the traffic laws of the State of Texas. TRANSPORTADORA EGOBA was

negligent in its undertaking and it neglected to provide its drivers (including LEDESMA GALVEZ) with instruction about avoiding unprotected left turns. This negligence was a proximate cause of Plaintiff's injuries and damages.

79. TRANSPORTADORA EGOBA certified to the FMCSA in writing and under oath, that it had a system for qualifying drivers. TRANSPORTADORA EGOBA violated this promise when it failed to properly qualify and/or hire LEDESMA GALVEZ. This negligence was a proximate cause of Plaintiff's injuries and damages.

80. TRANSPORTADORA EGOBA certified to the FMCSA in writing and under oath, that it had a driver training program when it applied to operate commercial motor vehicles in the United States. TRANSPORTADORA EGOBA violated this promise when it failed to train LEDESMA GALVEZ. This negligence was a proximate cause of Plaintiff's injuries and damages.

81. The FMCSA has provided guidance on what actions motor carriers must take to assure safe operations and compliance with the FMCSR. This guidance includes the CSA Safety Management Cycle, a document made available to TRANSPORTADORA EGOBA and other motor carriers licensed by the FMCSA.  The CSA Safety Management Cycle discusses the necessity for policies, procedures, training, communication, monitoring, and meaningful action by motor carriers like TRANSPORTADORA EGOBA. TRANSPORTADORA EGOBA negligently failed to implement the FMCSA's guidance, as evidenced by its multiple violations and this crash.

82. The FMCSR also require training. Section 390.3(e)(2) requires, "Every driver and employee involved in motor carrier operations shall be instructed regarding, and shall comply with, all applicable regulations contained in this subchapter." FMCSR 392.1(a)

requires, "Every motor carrier, its officers, agents, representatives, and employees responsible for the management, maintenance, operation, or driving of commercial motor vehicles, or the hiring, supervising, training, assigning, or dispatching of drivers, shall be instructed in and comply with the rules in this part." TRANSPORTADORA EGOBA was negligent and negligent *per se* in failing to train its drivers, including LEDESMA GALVEZ, in violation of FMCSR 390.3(e)(2) and 392.1(a). Upon information and belief, TRANSPORTADORA EGOBA was negligent in:

A. Failing to establish and enforce policies and procedures regarding unsafe driving and the hours-of-service regulations;

B. Failing to audit drivers' logs, supporting documents, and hours-of-service;

C. Permitting violations of the FMCSR, including but not limited to the hours-of-service regulations set out in Part 395;

D. Aiding and abetting violations of the hours-of-service regulations set out in Part 395 of the FMCSR;

E. Failing to establish and enforce policies and procedures necessary to ensure driving safety, including policies p prohibiting unprotected u-turns and policies prohibiting turning in front of an oncoming vehicle doing so would require the oncoming vehicle to brake or swerve to avoid a collision, and;

F. Failing to take action to remedy the problems with its safety management systems (including training, policies, and procedures) after receiving multiple alerts from the FMCSA SMS system, and communications from the FMCSA regarding the safety issues at the company.

83. TRANSPORTADORA EGOBA was also negligent in its hiring and/or qualification of LEDESMA GALVEZ to operate a commercial motor vehicle in the United States.

84. TRANSPORTADORA EGOBA had a duty dictated by the FMCSR to hire only qualified drivers to operate its tractor trailers.

85. TRANSPORTADORA EGOBA breached its duty to hire only qualified drivers to operate

its tractor trailers. In particular, LEDESMA GALVEZ's lack of experience, training, and education revealed him to be a dangerous driver for the purposes of operating commercial motor vehicles.

86. TRANSPORTADORA EGOBA's negligent qualification and/or hiring of LEDESMA GALVEZ to operate a commercial motor vehicle was a proximate cause of injuries to Plaintiff.

87. Each of the acts and omissions set out in the preceding paragraphs were direct and proximate causes of the collision and Plaintiff's damages.

**(Gross Negligence)**

88. Plaintiff hereby incorporates paragraphs 7 – 65 as if fully set forth herein.

89. Vice-principals and managers of TRANSPORTADORA EGOBA knew that its acts and omissions would naturally and probably result in extreme harm, including injury and damages to others. Nevertheless, TRANSPORTADORA EGOBA continued the conduct with malice or in reckless disregard of the consequences, from which recklessness and/or malice may be inferred. Thus, TRANSPORTADORA EGOBA is liable for punitive damages.

## V. DAMAGES

90. As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff was caused bodily injuries and incurred the following damages:

    A.    Past medical expenses;

    B.    Future medical expenses;

    C.    Physical pain in the past;

    D.    Physical pain that, in all reasonable probability, he will experience in the future;

    E.    Physical impairment in the past;

    F.      Physical impairment that, in all reasonable probability, will be endured in the future;

    G.      Disfigurement in the past;

    H.      Disfigurement that, in all reasonable probability, he will experience in the future;

    I.       Mental anguish in the past;

    J.       Mental anguish that, in all reasonable probability, he will experience in the future;

    K.      Loss of earning capacity in the past;

    L.       Loss of earning capacity that, in all reasonable probability, will be incurred in the future; and

    M.     Punitive damages.

## VI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that upon a final hearing of this action, judgment will be entered for the Plaintiff and against Defendants, jointly and severally, for damages in an amount exceeding the jurisdictional minimum of the Court, together with punitive damages, pre-judgment interest (from the date of injury through the date of judgment) at the maximum rate allowed by law, post-judgment interest at the legal rate, costs of court, and such other relief to which he may find himself entitled at law or in equity.

Respectfully submitted,

*/s/  Michael R. Cowen*
Michael R. Cowen
Bar No. 00795306
Sonia M. Rodriguez
Bar No. 24008466
COWEN | RODRIGUEZ | PEACOCK, P.C.
6243 IH-10 West, Suite 801
San Antonio, Texas 78201
Telephone: (210) 941-1301
Facsimile: (210) 880-9461
E-Mail for Service:
efilings@cowenlaw.com

**COUNSEL FOR PLAINTIFF, IBAN TREVINO**

PLAINTIFF DEMANDS TRIAL BY JURY